# SUPREME COURT OF THE UNITED STATES

DANE HARREL, ET AL.
23–877          *v.*
KWAME RAOUL, ATTORNEY GENERAL OF ILLINOIS,
ET AL.


JAVIER HERRERA
23–878          *v.*
KWAME RAOUL, ATTORNEY GENERAL OF ILLINOIS,
ET AL.


CALEB BARNETT, ET AL.
23–879          *v.*
KWAME RAOUL, ATTORNEY GENERAL OF ILLINOIS,
ET AL.


NATIONAL ASSOCIATION FOR GUN RIGHTS, ET AL.
23–880          *v.*
CITY OF NAPERVILLE, ILLINOIS, ET AL.


JEREMY W. LANGLEY, ET AL.
23–944          *v.*
BRENDAN F. KELLY, IN HIS OFFICIAL CAPACITY AS
DIRECTOR OF THE ILLINOIS STATE POLICE, ET AL.


GUN OWNERS OF AMERICA, INC., ET AL.
23–1010          *v.*
KWAME RAOUL, ATTORNEY GENERAL OF ILLINOIS,
ET AL.


ON PETITIONS FOR WRITS OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

Nos. 23–877, 23–878, 23–879, 23–880, 23–944,

Statement of THOMAS, J.

and 23–1010.　Decided July 2, 2024

The petitions for writs of certiorari are denied.  JUSTICE ALITO would grant the petitions for writs of certiorari.

Statement of JUSTICE THOMAS.

The State of Illinois enacted a law that makes it a felony to possess what Illinois branded "assault weapons," a term defined to include AR–15s.  See Ill. Comp. Stat., ch. 720, §5/24–1.9(a)(1)(J)(ii)(II) (West 2023).  "The AR–15 is the most popular semi-automatic rifle" in America and is therefore undeniably "in common use today." *Heller* v. *District of Columbia*, 670 F. 3d 1244, 1287 (CADC 2011) (KAVANAUGH, J., dissenting); see also *Garland* v. *Cargill*, 602 U. S. 406, 430–431 (2024) (SOTOMAYOR, J., dissenting) (describing "semiautomatic rifles" such as the AR–15 as "commonly available").  Petitioners sought a preliminary injunction against the enforcement of the law, arguing that the law violates their Second Amendment right to "keep and bear Arms."  The Court of Appeals for the Seventh Circuit rejected petitioners' request for a preliminary injunction, concluding "that the AR–15 . . . is not protected by the Second Amendment." *Bevis* v. *Naperville*, 85 F. 4th 1175, 1197 (2023).  According to the Seventh Circuit, the rifle selected by millions of Americans for self-defense and other lawful purposes does not even fall within the scope of the Arms referred to by the Second Amendment. *Ibid.*  This Court is rightly wary of taking cases in an interlocutory posture.  But, I hope we will consider the important issues presented by these petitions after the cases reach final judgment.

We have never squarely addressed what types of weapons are "Arms" protected by the Second Amendment.  To be sure, we explained in *District of Columbia* v. *Heller*, 554 U. S. 570 (2008), that the Second Amendment's protection "extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the

time of the founding." *Id.*, at 582. And, we noted that "the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes," *id.*, at 625, recognizing "the historical tradition of prohibiting the carrying of dangerous and unusual weapons," *id.*, at 627 (internal quotation marks omitted); see also *Caetano* v. *Massachusetts*, 577 U. S. 411, 417–419 (2016) (ALITO, J., concurring in judgment). But, this minimal guidance is far from a comprehensive framework for evaluating restrictions on types of weapons, and it leaves open essential questions such as what makes a weapon "bearable," "dangerous," or "unusual."

The Seventh Circuit's decision illustrates why this Court must provide more guidance on which weapons the Second Amendment covers. By contorting what little guidance our precedents provide, the Seventh Circuit concluded that the Second Amendment does not protect "militaristic" weapons. See 85 F. 4th, at 1199. It then tautologically defined "militaristic" weapons as those "that may be reserved for military use." *Id.*, at 1194. The Seventh Circuit's contrived "non-militaristic" limitation on the Arms protected by the Second Amendment seems unmoored from both text and history. See *Friedman* v. *Highland Park*, 577 U. S. 1039, 1041 (2015) (THOMAS, J., dissenting from denial of certiorari). And, even on its own terms, the Seventh Circuit's application of its definition is nonsensical. See 85 F. 4th, at 1222 (Brennan, J., dissenting) ("The AR–15 is a civilian, not military, weapon. No army in the world uses a service rifle that is only semiautomatic"). In my view, Illinois' ban is "highly suspect because it broadly prohibits common semiautomatic firearms used for lawful purposes." *Friedman*, 577 U. S., at 1042 (opinion of THOMAS, J.). It is difficult to see how the Seventh Circuit could have concluded that the most widely owned semiautomatic rifles are not "Arms" protected by the Second Amendment.

These petitions arise from a preliminary injunction, and

the Seventh Circuit stressed that its merits analysis was merely "a preliminary look at the subject." 85 F. 4th, at 1197. But, if the Seventh Circuit ultimately allows Illinois to ban America's most common civilian rifle, we can—and should—review that decision once the cases reach a final judgment. The Court must not permit "the Seventh Circuit [to] relegat[e] the Second Amendment to a second-class right." *Friedman*, 577 U. S., at 1043 (opinion of THOMAS, J.).